■ CNR Healthcare Network, Inc., et al., Appellants, v 86 Lefferts Corp., Respondent. [874 NYS2d 174]—

In an action, inter alia, for specific performance of an option to lease certain real property and for a judgment declaring that the plaintiffs are entitled to a 50-year lease for the subject property pursuant to the option, the plaintiffs appeal from a judgment of the Supreme Court, Kings County (F. Rivera, J.), dated August 10, 2007, which, upon a decision of the same court dated July 19, 2007, made after a nonjury trial, is in favor of the defendant and against them dismissing the complaint, and awarded the defendant judgment on its counterclaim for an attorney's fee pursuant to the option agreement for changes or additions made to any document annexed to the option agreement subsequent to November 22, 1995 to the extent of setting the matter down for a hearing to determine the amount of the attorney's fee.

Ordered that the judgment is modified, on the law and the facts, by deleting the first decretal paragraph thereof dismissing the complaint, and substituting therefor provisions awarding judgment in favor of the plaintiffs on the complaint, declaring that the plaintiffs are entitled to a 50-year lease for the subject property pursuant to the option, and directing the defendant to specifically perform the option for the lease of the subject property and execute a 50-year lease for the subject property in favor of the plaintiffs; as so modified, the judgment is affirmed, with costs to the plaintiffs.

The defendant, during the course of several years between 1995 and 2002, granted the plaintiffs an option to lease certain real property it owned for a period of 50 years. The plaintiffs, a not-for-profit corporation which operates various facilities for low-income senior citizens and a subsidiary corporation, respectively, planned to erect a 70-bed facility for low-income and infirm senior citizens on the subject property, the construction of which would be funded by the United States Department of Housing and Urban Development (hereinafter HUD).

Paragraph 14 of the rider to the option agreement, dated September 30, 2005, as amended November 22, 2005, which was incorporated into the final version of the option agreement, contained a "Further Assurances Clause," which required the defendant to "make such modifications to the annexed Lease as

may be necessary to comply with [HUD] regulations, requirements or funding requests, provided, however, that the Owner shall not be required to agree to any modification which materially increases his obligations or reduces the rents or Owner's other entitlement or benefits, or any other sums payable to the Owner pursuant to the Lease."

The plaintiffs contend that HUD required a clause in the proposed lease which subordinated any mortgage on the fee interest in the subject property to the lease, and that, pursuant to the further assurances clause, the defendant was compelled to agree to that provision. The defendant contends that the proposed clause materially reduced its entitlements or benefits—its ability to obtain mortgage financing—and it thus acted properly in refusing to accept the clause and rejecting the plaintiffs' attempt to exercise the option, in accordance with the exception in the further assurances clause. The defendant further contends that the proposed HUD subordination clause conflicted with a subordination clause agreed to by the parties, which provided that the lease be subordinated to any mortgage on the fee interest in the property, and required that the defendant and any mortgagee enter into a "non-disturbance agreement," which would permit the plaintiffs to remain as tenants in the facility to be constructed in the event of a foreclosure. The plaintiffs commenced the instant action, inter alia, for specific performance of the option.

After a nonjury trial, the Supreme Court determined that the subordination clauses were in conflict, and that the proposed HUD subordination clause materially reduced the defendant's entitlements and benefits to the subject premises—its ability to obtain a mortgage on the fee interest in the subject property. The court noted that while "there is no evidence that the conflict between HUD's modification and the option agreement actually affected the defendant's ability to acquire financing, it certainly could have." Accordingly, the Supreme Court awarded judgment in favor of the defendant, and dismissed the complaint. The court also awarded the defendant judgment on its counterclaim for an attorney's fee, and set the matter down for a hearing on the amount of the fee to be awarded. We modify.

As this case was tried without a jury, this Court has broad authority to render a judgment it finds warranted by the facts, taking due account of the opportunity the trial judge had to see and hear the witnesses (*see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]; *State Farm Mut. Auto. Ins. Co. v Stack*, 55 AD3d 594 [2008]).

The plaintiffs established their entitlement to specific perfor-

mance of the option, as they demonstrated that they were ready, willing, and able to perform under the contract (*see Buoninfante v Legacy Dev. USA Corp.,* 306 AD2d 511 [2003]; *Lamanna v Wing Yuen Realty,* 283 AD2d 165, 166 [2001]), and that they timely exercised the option in accordance with its terms and in the manner specified in the option (*see Kaplan v Lippman,* 75 NY2d 320, 325 [1990]; *Singh v Atakhanian,* 31 AD3d 425, 426 [2006]).

A contract should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases (*see Bailey v Fish & Neave,* 8 NY3d 523, 528 [2007]; *South Rd. Assoc., LLC v International Bus. Machs. Corp.,* 4 NY3d 272, 277 [2005]; *Matter of Westmoreland Coal Co. v Entech, Inc.,* 100 NY2d 352, 358 [2003]). A court should construe a contractual agreement so as to give full meaning and effect to its material provisions. A reading of the contract should not render any portion meaningless, and the contract should be read as a whole, with every part interpreted with reference to the whole; if possible, the contract will be interpreted as to give effect to its general purpose (*see Beal Sav. Bank v Sommer,* 8 NY3d 318, 324 [2007]; *Excess Ins. Co. Ltd. v Factory Mut. Ins. Co.,* 3 NY3d 577, 582 [2004]; *Matter of Westmoreland Coal Co. v Entech, Inc.,* 100 NY2d at 358). If a contractual provision is to be enforced, "it must be sufficiently certain and specific so that what was promised can be ascertained. Otherwise, a court, in intervening, would be imposing its own conception of what the parties should or might have undertaken, rather than confining itself to the implementation of a bargain to which" the parties have committed themselves (*Joseph Martin, Jr., Delicatessen v Schumacher,* 52 NY2d 105, 109 [1981]).

Reading the various documents comprising the option as a whole, the trial court erred in its determination that the two subordination clauses conflicted without applying the further assurances clause. The trial court's determination, standing alone, would render the further assurances clause meaningless, as that clause requires the defendant to accept all changes required by HUD to the proposed lease. Thus, under the option, unless the proposed HUD changes materially reduced an entitlement or benefit of the defendant, it was compelled to accept the proposed changes.

The only evidence in the record regarding such a material reduction was the testimony of the president of the defendant that an unnamed bank informed him that he could not obtain a mortgage on the property, but in the event that the property was leased, he would be granted a mortgage. The defendant

produced no evidence from any bank or financial institution corroborating the testimony. No evidence was presented as to whether the defendant was eligible to obtain a mortgage, or that it attempted to obtain a mortgage. Thus, other than the uncorroborated testimony of the defendant's president, there is no evidence in the record that the proposed HUD changes "could have" resulted in a material reduction of an entitlement or benefit of the defendant pursuant to the further assurances clause. The Supreme Court noted that there was no evidence that the defendant's ability to acquire financing was affected, and that its determination was based on the possibility that at some future time, if the defendant attempted to obtain a mortgage, it might be rejected. In addition, contrary to the defendant's contention, the evidence established that the changes to the proposed lease were required by HUD. Accordingly, the Supreme Court erred in dismissing the complaint, and should have awarded judgment in favor of the plaintiffs. Because this is, in part, a declaratory judgment action, the judgment should have contained a declaration that the plaintiffs are entitled to a 50-year lease for the subject premises pursuant to the option, and the defendant is directed to specifically perform the option and enter into a 50-year lease with the plaintiffs for the subject property (*see Lanza v Wagner,* 11 NY2d 317, 334 [1962], *appeal dismissed* 371 US 74 [1962], *cert denied* 371 US 901 [1962]).

However, we find that the trial court correctly awarded judgment in favor of the defendant on its counterclaim for an attorney's fee pursuant to the option agreement for changes or additions made to any document annexed to the option agreement subsequent to November 22, 1995 (*see Singh v Atakhanian,* 31 AD3d 425, 426 [2006]).

The parties' remaining contentions either need not be addressed in light of our determination or are without merit. Florio, J.P., Covello, Balkin and Leventhal, JJ., concur. [*See* 16 Misc 3d 1141(A), 2007 NY Slip Op 51780(U).]