Grandfeld II, LLC v Kohl's Dept. Stores, Inc. (2018 NY Slip Op 05289)





Grandfeld II, LLC v Kohl's Dept. Stores, Inc.


2018 NY Slip Op 05289


Decided on July 18, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 18, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
SHERI S. ROMAN
SYLVIA O. HINDS-RADIX
LINDA CHRISTOPHER, JJ.


2016-01279
 (Index No. 22962/09)

[*1]Grandfeld II, LLC, respondent-appellant, 
v
Kohl's Department Stores, Inc., et al., appellants- respondents.


Pillsbury Winthrop Shaw Pittman LLP, New York, NY (E. Leo Milonas and Jay D. Dealy of counsel), for appellants-respondents.
Somer Heller & Corwin, LLP (Michael C. Marcus, New York, NY, of counsel), for respondent-appellant.



DECISION & ORDER
In an action, inter alia, to recover damages for breach of a lease, the defendants appeal, and the plaintiff cross-appeals, from a judgment of the Supreme Court, Suffolk County (Elizabeth H. Emerson, J.), entered December 7, 2015. The judgment, insofar as appealed from, upon a decision on the issue of liability of the same court dated February 4, 2013, and upon a decision on the issue of damages of the same court dated July 13, 2015, made after a single nonjury trial, is in favor of the plaintiff and against the defendants in the total sum of $5,726,102.32. The judgment, insofar as cross-appealed from, awarded the plaintiff damages in the total sum of only $5,726,102.32.
ORDERED that the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.
In June 2009, the plaintiff commenced this action alleging that the defendants breached a "ground lease" (hereinafter the lease) dated October 17, 2003, whereby the defendants agreed to, among other things, build and operate a department store on the plaintiff's property located in the Town of Brookhaven. The lease contemplated an initial term of 20 years, with 5-year renewal options, and that, at the end of the lease, the plaintiff would take ownership of the building. The lease also provided that if certain contingencies were not met, either party could terminate the lease by giving written notice to the other party, whereupon neither party would have any further liability or obligation.
After the plaintiff, on May 23, 2008, satisfied the condition of obtaining zoning [*2]approval, the defendants were required to use commercially reasonable efforts to obtain governmental approvals within six months. The lease defined governmental approvals as "all land use approvals and other approvals which, in [the defendants'] reasonable discretion, may be necessary for the construction and operation of the Building, including, without limitation, zoning variances, site plan approvals, building permits, access and utility easements, side yard agreements and other necessary or required approvals of the Building." The defendants retained various firms to assist them in obtaining the governmental approvals and, on October 24, 2008, a building permit was issued by the Town of Brookhaven. However, the defendants did not commence construction and instead, by letter dated January 21, 2009, notified the plaintiff that they were terminating the lease because the defendants had not obtained all governmental approvals. The defendants referred to their failure to obtain a New York State Highway Work Permit from the New York State Department of Transportation (hereinafter the DOT permit).
During a nonjury trial, the plaintiff presented evidence showing that the DOT permit was not required until construction was nearly complete, at or near the time that the application for the certificate of occupancy was to be submitted. Additionally, both parties presented testimony from real estate appraisers on the issue of the amount of damages sustained by the plaintiff as a result of the termination of the lease. The Supreme Court determined that the defendants breached the lease, resulting in damages to the plaintiff in the total sum of $5,726,102.32, and entered judgment accordingly. The defendants appeal, and the plaintiff cross-appeals, from the judgment. 
"In reviewing a determination made after a nonjury trial, the power of the Appellate Division is as broad as that of the trial court, and this Court may render the judgment it finds warranted by the facts, taking into account in a close case that the trial judge had the advantage of seeing the witnesses" (ProHealth Care Assoc., LLP v Shapiro, 46 AD3d 792, 793; see Campbell v Campbell, 107 AD3d 929, 930; Dilapi v Empire Drilling & Blasting, Inc., 62 AD3d 936, 937).
When parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms (see W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162). This principle is particularly important in the context of real property transactions, where commercial certainty is a paramount concern, and where the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length (see Madison Ave. Leasehold, LLC v Madison Bentley Assoc., LLC, 8 NY3d 59, 66; Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475). A contract provision requiring the exercise of "reasonable discretion" includes a promise not to act arbitrarily, irrationally, or without reasonable basis (see ProSource Technologies, LLC v Housing Trust Fund Corp., 49 Misc 3d 1205[A] [Sup Ct, Albany County]; see also Dalton v Educational Testing Serv., 87 NY2d 384, 389; Tedeschi v Wagner Coll., 49 NY2d 652, 659; Legend Autorama, Ltd. v Audi of Am., Inc., 100 AD3d 714, 716; Richbell Info. Servs. v Jupiter Partners, 309 AD2d 288, 302).
In this case, it was unreasonable for the defendants to consider the DOT permit a governmental approval that had to be obtained for construction to commence, as it was not necessary until the near completion of construction. The defendants' contention that the DOT permit was a governmental approval within the meaning of the lease, since it was necessary for the operation of the building, would render meaningless the six-month time limitation to obtain such governmental approvals (see Nomura Home Equity Loan, Inc., Series 2006-FM2, v Nomura Credit & Capital, Inc., 30 NY3d 572; CNR Healthcare Network, Inc. v 86 Lefferts Corp., 59 AD3d 486, 489). A contract should be read as a whole, with every part interpreted with reference to the whole; if possible, the contract will be interpreted so as to give effect to its general purpose (see Beal Sav. Bank v Sommer, [*3]8 NY3d 318, 324; Excess Ins. Co. Ltd. v Factory Mut. Ins. Co., 3 NY3d 577, 582; Matter of Westmoreland Coal Co. v Entech, Inc., 100 NY2d 352, 358). Here, the general purpose of the lease was to set forth the chronological steps for the construction and operation of the store. Once the defendants obtained the governmental approvals necessary to commence construction, they could not terminate the lease on the ground that additional governmental approvals would be required in the future when construction was nearly complete (cf. Prince-Vomvos v Winkler Real Estate, Inc., 140 AD3d 1043, 1045; Newfield v General Motors Corp., 84 AD2d 548, 549, affd 56 NY2d 818; Mec-Guy Realty Corp. v Amerada Hess Corp., 69 AD2d 812, 813). Thus, we agree with the Supreme Court's finding that the defendants breached the lease. If we accepted the defendants' contention that the governmental approvals necessary for construction and operation of the building include approvals that could be obtained at or near the time of an application for a certificate of occupancy, then the inability to obtain a certificate of occupancy—which can only be obtained after completion of construction—could be used as a basis for avoiding the defendants' responsibility to commence construction. Such an interpretation of the contract would be a plainly unreasonable result (see Brown Bros. Elec. Contrs. v Beam Constr. Corp., 41 NY2d 397, 400).
The lease provides that, in the event of the defendants' default, the plaintiff is entitled to "the discounted net present value of the balance of the annual fixed rent for the remainder of the Term minus the then fair market rental value of the Premises for the remainder of the Term." The defendants contend that the Supreme Court should have adopted the fair market rental valuation of their expert, and the plaintiff asserts that the court should have adopted the discount rate of its expert. As valuation is largely a question of fact, trial courts have considerable discretion in reviewing the relevant evidence (see White v Farrell, 20 NY3d 487, 500; Matter of Consolidated Edison Co. of N.Y., Inc. v City of New York, 8 NY3d 591, 597; W.T. Grant Co. v Srogi, 52 NY2d 496, 510). We agree with the court's determination to adopt the analysis of the plaintiff's expert regarding fair market rental value, but to apply the discount rate of the defendants' expert (see Matter of W.O.R.C. Realty Corp. v Board of Assessors, 100 AD3d 75, 91; Saccone v Gross, 84 AD3d 1208, 1209).
The Supreme Court's determination that the defendants breached the lease, resulting in damages in the total sum of $5,726,102.32, is amply supported by the evidence adduced at trial and warranted by the facts, and we discern no basis to disturb the judgment (see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499; Family Operating Corp. v Young Cab Corp., 129 AD3d 1016, 1018; White v Guerrera, 50 AD3d 779, 779).
The parties' remaining contentions are without merit.
RIVERA, J.P., ROMAN, HINDS-RADIX and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court