Wilson v PBM, LLC (2021 NY Slip Op 00593)





Wilson v PBM, LLC


2021 NY Slip Op 00593


Decided on February 3, 2021


Appellate Division, Second Department


Christopher, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 3, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, A.P.J.
CHERYL E. CHAMBERS
ANGELA G. IANNACCI
LINDA CHRISTOPHER, JJ.


2017-08428
 (Index No. 515620/15)

[*1]Ronnie Wilson, appellant, 
v
PBM, LLC, etc., et al., respondents.



APPEAL by the plaintiff, in an action, inter alia, to recover damages for employment discrimination on the basis of race in violation of 42 USC § 1981, Executive Law § 296, and Administrative Code of the City of New York § 8-107, from an order of the Supreme Court (Bernard J. Graham, J.), entered July 18, 2017, in Kings County. The order granted the defendants' motion to compel arbitration and, in effect, pursuant to CPLR 3211(a) to dismiss the complaint.



C. T. Lee & Associates, New York, NY (Corey T. Lee of counsel), for appellant.
Davidoff Hutcher & Citron LLP, New York, NY (Mark E. Spund and Joshua Krakowsky of counsel), for respondents.



CHRISTOPHER, J.


OPINION & ORDER
This appeal concerns the issue of whether pursuant to a collective bargaining agreement, the 2012 Contractors Agreement (hereinafter the CBA) between Service Employees International Union Local 32BJ (hereinafter the Union) and The Realty Advisory Board on Labor Relations, Inc. (hereinafter the RAB), an employee has the right to pursue employment discrimination claims individually in court upon the Union declining to pursue arbitration of such claims, or whether the claims are subject to mandatory arbitration under the terms of the CBA. For the reasons that follow, we conclude that the Supreme Court correctly determined that arbitration of the discrimination claims brought by the plaintiff is mandated by the clear terms of the CBA.
Background
The plaintiff is an African-American male who was employed by the defendant PBM, LLC, doing business as Perfect Building Maintenance Corp. (hereinafter PBM), as a porter and freight elevator operator from 2002 until termination of his employment in August 2014. PBM is a privately held company that provides janitorial and related services to single- and multi-tenant properties in the northeast area. It is a member of the RAB, a multi-employer bargaining association. While at PBM, the plaintiff was a member of the Union. The terms and conditions of the plaintiff's employment during the relevant time period were governed by the CBA, which was effective January 1, 2012, to December 31, 2015. Section 30(A) of Article XVI of the CBA, which addresses arbitration, provides that discrimination claims "shall be subject to the grievance and arbitration procedure (Article V and VI) as the sole and exclusive remedy for violations." Section 30(B), the No-Discrimination Protocol, provides, inter alia, for arbitration procedures when the Union has declined to take an individual employee's employment discrimination claims set forth in section 30(A) to arbitration.
The plaintiff alleges that, at his workplace, he routinely experienced discrimination, was subjected to a hostile work environment, and was discharged from his employment due to his race. He asserts that beginning in or around December 2012, his direct supervisor began to routinely refer to him as "boy," and from July 2013 until February 2014, he observed "several nooses" hanging [*2]in the workplace. After filing a grievance with the Union, the plaintiff was reassigned to another building, without being given any explanation for the transfer. On February 7, 2014, the plaintiff filed a second grievance with the Union regarding the transfer and alleging racial discrimination. He was then reassigned a second time to a different building, where he was required to undergo a background check which revealed that he had prior criminal convictions that he had failed to report on his original employment application. The plaintiff's employment was terminated on August 4, 2014. The plaintiff filed another grievance on the basis that he was unjustly discharged. While the Union arbitrated the plaintiff's unjust discharge complaints, it declined to arbitrate the plaintiff's claims of racial discrimination. In October 2015, the plaintiff attempted without success to mediate the discrimination claims. Thereafter, in December 2015, the plaintiff commenced this action against PBM and several of PBM's employees to recover damages, alleging discrimination and hostile work environment based on race and retaliation under 42 USC § 1981, the New York State Human Rights Law (Executive Law § 296; hereinafter NYSHRL), and the New York City Human Rights Law (Administrative Code of City of NY, tit 8; hereinafter NYCHRL). The plaintiff also alleged causes of action to recover damages for negligence, negligent supervision and retention, and negligent training.
In May 2016, the defendants moved pursuant to CPLR 7503 to compel arbitration and/or, in effect, pursuant to CPLR 3211(a)(1) and (7) to dismiss the complaint. They argued that the plaintiff's claims were subject to mandatory arbitration pursuant to the terms of the CBA. The Supreme Court granted the defendants' motion. The plaintiff appeals.
Discussion
Generally, "[t]here is a longstanding public policy favoring the arbitration of disputes, particularly with respect to broad arbitration clauses set forth in collective bargaining agreements" (Ibarra v 101 Park Rest. Corp., 140 AD3d 700, 702 [citation omitted]). The United States Supreme Court enunciated clear support of this position in its 2009 decision in 14 Penn Plaza LLC v Pyett (556 US 247), wherein the Court analyzed an arbitration clause that was substantially the same as the one at issue herein, and which was contained in a prior version of a collective bargaining agreement between the Union and the RAB. In Pyett, the Court, finding that Congress did not preclude waiver of judicial remedies for the employees' statutory claims for age discrimination under the Age Discrimination in Employment Act of 1967 (29 USC § 621 et seq.; hereinafter ADEA), held "that a collective bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law" (14 Penn Plaza LLC v Pyett, 556 US at 274).
Pyett's holding has since been applied to claims arising under other employment discrimination statutes, including 42 USC § 1981, title VII of the Civil Rights Act of 1964 (42 USC, ch 21, § 2000e et seq.), the NYSHRL, and the NYCHRL (see Sum v Tishman Speyer Props., Inc., 37 AD3d 284, 284; Lawrence v Sol G. Atlas Realty Co., Inc., 841 F3d 81, 83 [2d Cir]; Lobban v Cromwell Towers Apts., LP, 345 F Supp 3d 334, 347-348 [SD NY]; Hamzaraj v ABM Janitorial Northeast Inc., 2016 WL 3571387, 2016 US Dist LEXIS 83216 [SD NY, No. 15-Civ-2030 (ER); Germosen v ABM Indus. Corp., 2014 WL 4211347, 2014 US Dist LEXIS 119092 [SD NY, No. 13-CV-1978 (ER)]; Duraku v Tishman Speyer Props., Inc., 714 F Supp 2d 470, 473-474 [SD NY]).
In Pyett, the United States Supreme Court reasoned that the Union and the RAB's agreement that employment-related discrimination claims would be resolved in arbitration was a freely negotiated term between them that easily qualifies as a "'conditio[n] of employment'" subject to mandatory bargaining under section 159(a) of the National Labor Relations Act (29 USC § 159[a]; hereinafter NLRA), the statute which governs federal labor relations law (14 Penn Plaza LLC v Pyett, 556 US at 256, quoting Litton Financial Printing Div., Litton Business Systems, Inc. v NLRB, 501 US 190, 199). The Court noted that freedom of contract is one of the fundamental policies of the NLRA, and that "'[j]udicial nullification of contractual concessions'" is contrary to that policy (14 Penn Plaza LLC v Pyett, 556 US at 257, quoting NLRB v Magnavox Co., 415 US 322, 328). The Court further expounded that there was no legal basis to strike down the arbitration clause which clearly and unmistakably required the employees to arbitrate the age discrimination claims at issue, as "[t]he NLRA provided the Union and the RAB with statutory authority to collectively bargain for arbitration of workplace discrimination claims, and Congress did not terminate that authority with respect to federal age-discrimination claims in the ADEA" (14 Penn Plaza LLC v Pyett, 556 US at 260).
However, while acknowledging that "a substantive waiver of federally protected civil [*3]rights will not be upheld," the United States Supreme Court declined to address the employees' argument that the collective bargaining agreement operated as a substantive waiver of their statutory rights, as it not only precluded litigation of their federal statutory claims in court, but also allowed the Union to block arbitration of such claims (id. at 273). Thus, as noted by the dissent (Souter, J.), the majority opinion in Pyett "explicitly reserves the question whether a [collective bargaining agreement's] waiver of a judicial forum is enforceable when the union controls access to and presentation of employees' claims in arbitration, . . . which is usually the case" (id. at 285 [Souter, J., dissenting] [internal quotation marks omitted].
In this case, Article XVI § 30 of the CBA, entitled "No Discrimination," addresses issues regarding employment discrimination and their resolution. Article XVI § 30(A) addresses arbitration and provides in pertinent part:
"There shall be no discrimination against any present or future employee by reason of race creed, color, age, disability, national origin, sex, sexual orientation, union membership or any characteristic protected by law, including, but not limited to, claims made pursuant to . . . 42 U.S.C. § 1981, . . . the New York State Human Rights Law, the New York City Human Rights Code, . . . or any other similar laws, rules or regulations. All such claims shall be subject to the grievance and arbitration procedure (Article V and VI) as the sole and exclusive remedy for violations (emphasis added)."
Article V of the CBA sets forth the grievance procedures. The CBA provides that with respect to matters over which the arbitrator has jurisdiction, the procedures set forth in Article VI, entitled "Arbitration," "shall be the sole and exclusive method for the determination of all such issues" (CBA Article VI § 4). The CBA also provides in section 9 of Article VI that "[a]ll Union claims are brought by the Union alone, and no individual shall have the right to compromise or settle any claim without the written permission of the Union."
However, in 2009, following Pyett, the Union and the RAB agreed to provisions set forth in a document entitled Agreement and Protocol which they termed a pilot program, and which was later incorporated in section 30(B) of Article XVI of the CBA, entitled "No-Discrimination Protocol." The Agreement and Protocol was entered into as an alternative to arbitrating their dispute as to whether, as the Union contended, the CBA does not make provision for arbitrating claims the Union declined to take to arbitration, and therefore, individual employees could pursue their discrimination claims in court when the Union had declined to pursue such claims, or whether, as the RAB contended, such claims were subject to mandatory arbitration (see CBA Article XVI § 30[B][1]). As set forth below, this issue is referred to as the "reserved question" in the CBA.
By way of introduction to the No-Discrimination Protocol, section 30(B)(1), entitled "Protocol," provides:
"The parties to this Agreement, the Union and RAB, believe it is in the best interests of all involved . . . to promptly, fairly and efficiently resolve claims of workplace discrimination as covered [in Section 30(A)] (collectively 'claims'). Such claims are very often intertwined with contractual disputes under this Agreement. The RAB, on behalf of its members, maintains that it is committed to refrain from unlawful discrimination. The Union maintains it will pursue its policy of evaluating such claims and bringing those claims to arbitration where appropriate. To this end, the parties, notwithstanding the continuing disagreement between them described below, establish the following system of mediation and arbitration applicable to all such claims, whenever they arise . . . .
"As background, following the decision of the Supreme Court in 14 Penn Plaza, 556 US 247 (2009), the RAB and the Union have had a dispute about the meaning of the 'no discrimination clause' and the grievance and arbitration clauses in the collective bargaining agreements ('CBAs') entered into between these parties. The Union contends that the CBAs do not make provision for arbitration of any claims that the Union does not choose to take to arbitration, including statutory discrimination claims, and therefore, individual employees are not barred from pursuing their discrimination claims in court where the Union has declined to pursue them in arbitration. The RAB contends that the CBAs provide for arbitration of all individual [*4]claims, even where the Union has declined to bring such claims to arbitration.
"The parties agree that, should either the Union or the RAB deem it appropriate or necessary to do so, that party may bring to arbitration the question so reserved. The parties intend that the reserved question may only be resolved in an arbitration between them and not in any form of judicial proceeding . . . .
"Notwithstanding the above disagreement, in 2010, the parties initiated the pilot program provided for in this section (Agreement and Protocol, February 17, 2010, the 'No-Discrimination Protocol') as an alternative to arbitrating their disagreement. The parties have now agreed to include the No Discrimination Protocol as part of this Agreement, as set forth below. The Union and the RAB agree that the provisions of this Protocol do not resolve the reserved question. Neither the inclusion of this Protocol in the CBAs nor the terms of the Protocol shall be understood to advance either party's contention as to the meaning of the CBAs with regard to the reserved question, and neither party will make any representation to the contrary."
Section 30(B)(2) of the No-Discrimination Protocol, entitled "Mediation," provides for mandatory mediation of discrimination claims made by either the Union or an individual employee. Section 30(B)(3) of the No-Discrimination Protocol, entitled "Arbitration," specifically provides for arbitration procedures in the circumstance when an employee wishes to pursue a discrimination claim that the Union has declined to take to arbitration. This section provides in pertinent part:
"The undertakings described here with respect to arbitration apply to those circumstances in which the Union has declined to take an individual employee's employment discrimination claim under the no discrimination clause of the CBA (including statutory claims) to arbitration and the employee is desirous of litigating the claim. The forum described here will be available to employers and employees who are represented by counsel and to those who are unrepresented by counsel (CBA Article XVI § 30[B][3][a])."
The CBA Requires Arbitration of the Plaintiff's Statutory Discrimination Claims
Contrary to the plaintiff's contention, the CBA requires individual employees to arbitrate their statutory discrimination claims when the Union has declined to pursue such claims.
"[A]rbitration must be preferred unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" (Ibarra v 101 Park Rest. Corp., 140 AD3d at 702 [internal quotation marks omitted]). An agreement to arbitrate must be "clear, explicit and unequivocal" (God's Battalion of Prayer Pentecostal Church, Inc., v Miele Assoc., LLP, 6 NY3d 371, 374 [internal quotation marks omitted]; see Giffone v Berlerro Group, LLC, 163 AD3d 780, 780). "Arbitration is a matter of contract, and arbitration clauses, which are subject to ordinary principles of contract interpretation, must be enforced according to their terms" (Rutella v National Sec. Corp., 172 AD3d 1124, 1125-1126; see Matter of Monarch Consulting, Inc. v National Union Fire Ins. Co. of Pittsburgh, PA, 26 NY3d 659, 665).
The plaintiff argues that certain language contained in the No-Discrimination Protocol that was made part of the CBA subsequent to Pyett affirmatively and expressly makes clear that there is no requirement that an individual employee arbitrate his or her discrimination claims when the Union has declined to pursue those claims in arbitration. Moreover, he argues that pursuant to the No-Discrimination Protocol, such claims have been specifically excluded from the ambit of the arbitration clause. The plaintiff bases these assertions explicitly on the following language found in the section of the No-Discrimination Protocol entitled Protocol:
"The Union contends that the CBAs do not make provision for arbitration of any claims that the Union does not choose to take to arbitration, including statutory discrimination claims, and therefore, individual employees are not barred from pursuing their discrimination claims in court where the Union has declined to pursue them in arbitration.
"The Union and the RAB agree that the provisions of this Protocol do not resolve the [*5]reserved question. Neither the inclusion of this Protocol in the CBAs nor the terms of the Protocol shall be understood to advance either party's contention as to the meaning of the CBAs with regard to the reserved question, and neither party will make any representation to the contrary (CBA Article XVI § 30[B][1])."
However, the CBA, which is a contract, must
"be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases. A court should construe a contractual agreement so as to give full meaning and effect to its material provisions. A reading of the contract should not render any portion meaningless, and the contract should be read as a whole, with every part interpreted with reference to the whole; if possible, the contract will be interpreted as to give effect to its general purpose (CNR Healthcare Network, Inc. v 86 Lefferts Corp., 59 AD3d 486, 489 [internal citations omitted])."
"The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent" (NRT N.Y., LLC v Harding, 131 AD3d 952, 953-954 [internal quotation marks omitted]).
Contrary to the clear principles of contract law, the plaintiff would have us read the No-Discrimination Protocol as a stand-alone provision. However, regarding discrimination claims, the arbitration provision in Article XVI § 30(A) of the CBA provides that "[a]ll such claims shall be subject to the grievance and arbitration procedure . . . as the sole and exclusive remedy for violations." The language relied on by the plaintiff to support his position that individuals may pursue discrimination claims in court when the Union declines to bring them to arbitration, as found in section 30(B)(1), Protocol, merely provides background and explanation concerning the development of and reason for the inclusion of the No-Discrimination Protocol. In fact, with regard to the reserved question, the RAB's position on this issue is also set forth in the Protocol. Moreover, the parties agreed to the No-Discrimination Protocol as a way to abide with this issue, as an alternative to arbitrating their dispute. None of the language in the Protocol relied upon by the plaintiff changes the fact that the grievance and arbitration procedures set forth in the arbitration provision are the sole and exclusive remedy for all statutory discrimination claims. This is so, notwithstanding whether these claims are brought by the Union or by an individual employee pursuant to the No-Discrimination Protocol when the Union declines to pursue the claim. Rather, the No-Discrimination Protocol merely provides the individual employee with a mechanism for arbitrating those claims on his or her own, in circumstances when the Union has declined to pursue claims on his or her behalf. We note that, in so deciding, we are only determining that under the No-Discrimination Protocol, arbitration is mandatory; we do not make any determination with regard to the reserved question. This determination must be made through arbitration in accordance with the No-Discrimination Protocol, or the parties may agree in future contracts to abandon the pilot program and leave the question open to future litigation.
The plaintiff also contends that when an individual employee wishes to pursue a discrimination claim after the Union declines to bring the claim to arbitration, arbitration is merely permissive, not mandatory. In making this argument, the plaintiff relies on the sentence in the Arbitration section of the No-Discrimination Protocol that states "[t]he forum described here will be available to employers and employees who are represented by counsel and to those who are unrepresented by counsel" (emphasis added). Contrary to the plaintiff's contention, this sentence has no bearing on whether the arbitration procedures set forth in the No-Discrimination Protocol are mandatory. Rather, it merely clarifies that whether or not a party is represented, the arbitration forum is available to them.
Moreover, in order for the plaintiff to be required to arbitrate his employment discrimination claims, the CBA must "clearly and unmistakably" waive the plaintiff's right to proceed in a judicial forum (14 Penn Plaza LLC v Pyett, 556 US at 259-260, 274; see Lobban v Cromwell Towers Apts., LP, 345 F Supp 3d at 347-348). Here, the mandatory arbitration clause "clearly and unmistakably" waives the plaintiff's right to proceed in a judicial forum. It explicitly references the employment discrimination statutes that the plaintiff has alleged were violated, and states that "[a]ll such claims shall be subject to the grievance and arbitration procedure . . . as the sole and exclusive remedy for violations."
Notably, many courts within the Second Circuit have analyzed provisions [*6]substantially similar to the arbitration clause, which requires arbitration of all discrimination claims, and the No-Discrimination Protocol found in the CBA at issue, and have concluded that arbitration is mandated when an individual employee wishes to litigate his or her statutory discrimination claims, and the Union has declined to take his or her claim to arbitration (see Lobban v Cromwell Towers Apts., LP, 345 F Supp 3d at 348-349 [the court granted the defendants' motion to compel arbitration, finding the plaintiff's argument that the language in the protocol setting forth the Union's position granted employees a choice of forum if the Union declined to arbitrate their claims unavailing]; Restea v Brown Harris Stevens LLC, 2018 WL 1449183, *4, 2018 US Dist LEXIS 48362, *9-10 [SD NY, No. 17-Civ-4801 (VEC) (GWG)] [the court granted the defendant's motion to compel arbitration, finding the language in the protocol setting forth the Union's position that employees can pursue their employment discrimination claims in court where the Union declines to bring them to arbitration is provided only "[a]s background" and that "[a]s reflected in case law, this protocol binds a member to arbitrate a discrimination claim even if the Union declines to pursue the claim"]; Favors v Triangle Servs., Inc., 207 F Supp 3d 197, 203 [ED NY] [the court noted that the No-Discrimination Clause which governs all employment discrimination claims and requires arbitration of all such claims, must be read together with the No-Discrimination Protocol that governs the "subset" of claims where the Union declines to bring the employee's claim to arbitration. The court concluded that arbitration remains mandatory, even when the employee is pursuing a claim pursuant to the procedure set forth in the No-Discrimination Protocol]; Duraku v Tishman Speyer Props., Inc., 714 F Supp 2d at 474 [finding that the collective bargaining agreement and February 2010 Agreement between the Union and the RAB require resolution of the plaintiff's statutory employment discrimination claims through mediation and/or arbitration]).
The CBA's Arbitration Provision Does Not Operate as a Substantive Waiver of the Plaintiff's Statutory Rights
The plaintiff also argues that the arbitration provision in the CBA is unenforceable because it operates as a substantive waiver of his statutory rights. It is his position that under the CBA, as an individual Union member, he did not have an unfettered right to arbitrate his discrimination claims, but rather he had to rely on the Union to arbitrate his grievances. He asserts that since the Union declined to pursue his claims, the CBA's arbitration clause cannot be enforced against him. The plaintiff's argument is unavailing and without merit.
It is true that the decision in Pyett left open the possibility that a collective bargaining agreement that not only precludes lawsuits of employees' statutory discrimination claims, but allows a Union to block arbitration of these claims, operates as a substantive waiver of the employees' "federally protected civil rights," and would not be enforceable (14 Penn Plaza v Pyett LLC, 556 US at 273). The United States Supreme Court in Pyett declined to resolve whether the collective bargaining agreement at issue in that case allowed the Union "to prevent [the employees] from effectively vindicating their federal statutory rights in the arbitral forum" (id. at 273-274 [internal quotation marks omitted]).
However, contrary to the plaintiff's contention, the possibility left open by Pyett is not applicable here. As previously noted, the CBA contains the No-Discrimination Protocol, a pilot program originally initiated by the Union and the RAB in response to their dispute following Pyett, which specifically provides procedures for the plaintiff to arbitrate his discrimination claims in the circumstance when the Union has declined to pursue them. The plaintiff's additional argument that the CBA is not enforceable because it requires him to arbitrate his claims on his own when the Union declines to do so is equally unavailing, as he had access to the arbitral forum, whether through the Union, or on his own, to vindicate his statutory rights (see Glover v Colliers Intl. NY, LLC, 2014 WL 5410016, 2014 US Dist LEXIS 151227 [SD NY, No. 13-CV-8843 (JMF)]; Germosen v ABM Indus. Corp., 2014 WL 4211347, 2014 US Dist LEXIS 119092).
Many United States District Courts have decided cases involving collective bargaining agreements similar to the one herein. These courts have rejected arguments posited by parties similar to the substantive waiver argument presented by the plaintiff herein (see Hamzaraj v ABM Janitorial Northeast Inc., 2016 WL 3571387, 2016 US Dist LEXIS 83216 [finding that the plaintiff's statutory discrimination claims were subject to mandatory arbitration where the collective bargaining agreement at issue contained the Protocol. The court reasoned that there was no waiver of the plaintiff's statutory rights nor was he prevented from vindicating them in the arbitral forum, noting that even if the Union declined to take the plaintiff's discrimination claim to arbitration, the collective bargaining agreement provided a means for him to pursue his claim in arbitration [*7]independently]; Glover v Colliers Intl. NY, LLC, 2014 WL 5410016, *4, 2014 US Dist LEXIS 151227, *12-13 [finding that the plaintiff's ADEA claims were subject to mandatory arbitration. The court reasoned that "[a]lthough Pyett did leave open the possibility that an arbitration clause could be deemed unenforceable if it prevents plaintiffs from effectively vindicating their federal statutory rights in the arbitral forum, that potential escape hatch" did not apply as the agreement at issue provided for procedures for arbitration when the Union declined to bring an employee's claim to arbitration (internal quotation marks and citation omitted)]; Germosen v ABM Indus. Corp., 2014 WL 4211347, 2014 US Dist LEXIS 119092 [finding that the plaintiff's claims were subject to mandatory arbitration pursuant to the terms of the collective bargaining agreement]; Jenkins v Collins Bldg. Servs., Inc., 2013 WL 8112381, 2013 US Dist LEXIS 186412 [SD NY, No. 10-Civ-6305 (AKH)] [noting that the court had repeatedly concluded that under the supplemental collective bargaining agreement, which provides procedures for individual employees to arbitrate their statutory discrimination claims in those circumstances when the Union has declined to do so, individual employees are required to arbitrate their claims]).
Morris v Temco Serv. Indus., Inc. (2010 WL 3291810, 2010 US Dist LEXIS 84885 [SD NY, No. 09-Civ-6194 (WHP)]) and Kravar v Triangle Servs., Inc. (2009 WL 1392595, 2009 US Dist LEXIS 42944 [SD NY, No. 06-CV-07858 (RJH)]), relied upon by the plaintiff, are inapposite. The collective bargaining agreements in Morris and Kravar both predated the Pyett decision and the initiation of the No-Discrimination Protocol. They contained arbitration clauses which were essentially identical to each other and to the one in the CBA at issue. These arbitration clauses provided that discrimination claims "shall be subject to the grievance and arbitration procedure . . . as the sole and exclusive remedy" (Morris v Temco Serv. Indus., Inc., 2010 WL 3291810, *1, 2010 US Dist LEXIS 84885, *3; Kravar v Triangle Servs., Inc., 2009 WL 1392595, *1, 2009 US Dist LEXIS 42944, *3-4). In Morris and Kravar, relying on the analysis in Pyett, the District Courts found that because, under the collective bargaining agreements, the plaintiffs had to rely on the Union to arbitrate their discrimination claims, and the Union had declined to prosecute these claims, the collective bargaining agreements "operated to preclude [the plaintiffs] from raising [their] . . . discrimination claims in any forum" (Kravar v Triangle Servs., Inc., 2009 WL 1392595, *3, 2009 US Dist LEXIS 42944, *9; see Morris v Temco Serv. Indus., Inc., 2010 WL 3291810, 2010 US Dist LEXIS 84885). Essentially the courts determined that the arbitration provision in the collective bargaining agreements operated as a "substantive waiver of [the plaintiffs'] federally protected civil rights," and could not be enforced (14 Penn Plaza LLC v Pyett, 556 US at 273; see Morris v Temco Serv. Indus., Inc., 2010 WL 3291810, 2010 US Dist LEXIS 84885; Kravar v Triangle Servs., Inc., 2009 WL 1392595, 2009 US Dist LEXIS 42944). Significantly, unlike the collective bargaining agreements in Morris and Kravar, the CBA at issue herein contains the No-Discrimination Protocol that provides a mechanism for the individual Union members to arbitrate their discrimination claims on their own in the event the Union declines to pursue such claims. Therefore, the determinations in Morris and Kravar are not controlling under the facts of this case.
We note that in 2019, in the case of Espada v Guardian Serv. Indus., Inc. (2019 WL 5309963, 2019 US Dist LEXIS 181187 [ED NY, No. 18-CV-5443 (ILJ) (JO)]), the United States District Court for the Eastern District of New York considered a collective bargaining agreement that contained an arbitration clause and No-Discrimination Protocol that were substantially similar to those in the CBA at issue in this matter, and denied the defendants' motion to compel arbitration of the plaintiff's discrimination claims, finding that notwithstanding the inclusion of the "No-Discrimination Protocol," essentially, the reasoning of Kravar controlled. The court in Espada acknowledged that after Pyett was decided, the Union and the RAB amended the collective bargaining agreement by adding the No-Discrimination Protocol that "creates a vehicle for individual employees to arbitrate their discrimination claims if the Union declines to represent them" (Espada v Guardian Serv. Indus., Inc., 2019 WL 5309963, *4, 2019 US Dist LEXIS 181187, *11). However, relying on language in the "preface" to the No-Discrimination Protocol that states that "[n]either the inclusion of [the] Protocol . . . nor the terms of the Protocol shall be understood to advance either party's contention as to the meaning of the [collective bargaining agreements] with regard to the [question of whether claims brought by individual employees are subject to compulsory arbitration]," the court determined that "although default rules of contractual interpretation would require the [c]ourt to examine the [collective bargaining agreement] as a whole, the Protocol demands that we put on blinders, resolving the issue as if it simply did not exist" (Espada v Guardian Serv. Indus., Inc., 2019 WL 5309963, *5, 2019 US Dist LEXIS 181187, *14-15 [internal quotation marks and [*8]citation omitted]). Noting that the "preface" indicates that the No-Discrimination Protocol was not intended to "resolve the reserved question," the Espada court reasoned that the No-Discrimination Protocol does no more than "[freeze] in place the parties' pre-existing disagreement as to the meaning of the pre-Protocol [collective bargaining agreement], leaving it for future courts to decide, while offering a voluntary arbitration mechanism in those cases where arbitration was desired" (Espada v Guardian Serv. Indus., Inc., 2019 WL 5309963, *6, 2019 US Dist LEXIS 181187, *17-18 [internal quotation marks omitted]). The Espada court found that by removing the Protocol from its analysis, the case was indistinguishable from Kravar (see Espada v Guardian Serv. Indus., Inc., 2019 WL 5309963, 2019 US Dist LEXIS 181187). The court determined that as in Kravar, the collective bargaining agreement "must be construed as preserving an employee's right to litigate their statutory discrimination claims where the Union has declined to arbitrate the claim under the [collective bargaining agreement]," and noted that enforcement of the mandatory arbitration provision would deprive individual employees of vindicating their statutory rights in any forum (Espada v Guardian Serv. Indus., Inc., 2019 WL 5309963, *5, 2019 US Dist LEXIS 181187, *15-16).
To read the CBA as if the No-Discrimination Protocol was in fact absent flies in the face of case law that requires an agreement to be read in its entirety, so as to give full meaning to intent (see CNR Healthcare Network, Inc. v 86 Lefferts Corp., 59 AD3d at 489), yet the Espada court in "put[ting] on blinders" ignored these basic tenets of contract law (Espada v Guardian Serv. Indus., Inc., 2019 WL 5309963, *5, 2019 US Dist LEXIS 181187, *15). To do so, and to arrive at the Espada court's result, requires a strained reading of the CBA. As is previously set forth in detail, the No-Discrimination Protocol, including its "preface," must be read in the context of the entire agreement, leading to the conclusion that, in fact, this CBA did not operate as a substantive waiver of the plaintiff's protected civil rights.
The CBA's Arbitration Provision Provides For Adequate Relief
There is also no merit to the plaintiff's argument that the arbitration provision of the CBA is invalid because it does not provide for adequate relief should he prevail. He asserts that while 42 USC § 1981 and the NYCHRL provide for the recovery of reasonable costs and attorney's fees by a prevailing plaintiff, pursuant to Article XVI § 30(B)(3)(b) and (d), the No-Discrimination Protocol of the CBA requires the plaintiff to bear his own costs and attorney's fees regardless of the outcome of the arbitration, and therefore is unenforceable.
Pursuant to 42 USC § 1988, in an action under section 1981, courts may award the prevailing party reasonable attorney's fees, including expert fees, as part of the costs. Similarly, the NYCHRL provides that "the court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs" (Administrative Code § 8-502[g]) .
In DeGaetano v Smith Barney, Inc. (983 F Supp 459, 469-470 [SD NY]), the District Court found that provisions in an arbitration agreement that waived a plaintiff's right to obtain attorney's fees as a prevailing Title VII plaintiff were void as against public policy. The court found that arbitration clauses mandating arbitration of statutory claims "are enforceable only to the extent that the arbitration preserves the substantive protections and remedies afforded by the statute; [that is], only if a plaintiff pursuing claims under the statute 'effectively may vindicate [his or her] statutory cause of action in the arbitral forum'" (id. at 469, quoting Gilmer v Interstate/Johnson Lane Corp., 500 US 20, 28 [internal quotation marks omitted]).
Here, section 30(B)(3)(b) of the CBA provides in pertinent part: (1) that the employer and the employee shall decide between them "the extent to which each shall bear responsibility for the costs of the arbitrator"; and (2) that while the arbitration shall be conducted pursuant to the American Arbitration Association (hereinafter AAA) National Rules for Employment Disputes, "those rules pertaining to the administration by the AAA and the payment of fees, and any disputes about the manner of proceeding shall be decided by the arbitrator." Section 30(B)(3)(d) provides that "the arbitrator shall not have authority to award relief that would require amendment of the CBA or other agreement(s) between the Union and the RAB or conflict with any provision of any [collective bargaining agreements] or other agreement(s)." Contrary to the plaintiff's contention, neither of these provisions affirmatively preclude an award of attorney's fees to a prevailing plaintiff. Additionally, even if these provisions do restrict the plaintiff's statutory rights, the proper remedy would not be to invalidate the entire arbitration provision, but rather to sever the unlawful provision (see Herrera v Katz Communications, Inc., 532 F Supp 2d 644, 647 [SD NY]; DeGaetano v Smith [*9]Barney, Inc., 983 F Supp at 470).
The plaintiff further contends that the arbitration provision of the CBA is invalid in that, in contravention of the discrimination statutes, section 4 of Article VI makes the employer's payment of damages, costs, and expenses contingent on the plaintiff proving that the employer "deliberate[ly] inten[ded] to violate" the CBA. However, the plaintiff misconstrues this provision. Article VI § 4 actually states that the arbitrator has the "power to grant any remedy required to correct a violation of [the] Agreement, including, but not limited to damages and mandatory orders, and said Arbitrator shall have further power in cases of willful violations (violations reflective of a deliberate intent to violate [the] Agreement) to award appropriate remedies, including, but not limited to damages, all costs, and expenses incurred by the Union in the processing of the grievance and arbitration proceedings." Contrary to the plaintiff's contention, this provision does not make the recovery of damages, costs, and expenses contingent upon proving a willful violation, but rather simply specifies that in the case of a willful violation, the arbitrator has the power to award these remedies as well as other appropriate remedies.
Arbitration of Discrimination Claims Under the NYCHRL and 42 USC § 1981 Is Not Contrary to Public Policy
Also unavailing is the plaintiff's contention that compulsory arbitration is inconsistent with the purposes of 42 USC § 1981 and the NYCHRL and therefore, the arbitration provision in the CBA is unenforceable as to the plaintiff's claims under these statutes.
As previously discussed, there is a strong public policy favoring arbitration (see Matter of Smith Barney Shearson v Sacharow, 91 NY2d 39, 49), and claims under section 1981 and the NYCHRL have been made subject to arbitration pursuant to collective bargaining agreements (see Lawrence v Sol G. Atlas Realty Co., Inc., 841 F3d at 83; Duraku v Tishman Speyer Props., Inc., 714 F Supp 2d at 473-474; Johnson v Tishman Speyer Props., L.P., 2009 WL 3364038, 2009 US Dist LEXIS 96464 [SD NY, No. 09-Civ-1959 (WHP)]).
Dismissal of the Action Was Improper; the Action Should Be Stayed
The Supreme Court's determination to grant that branch of the defendants' motion which was, in effect, pursuant to CPLR 3211(a) to dismiss the complaint was improper. "An agreement to arbitrate is not a defense to an action," and "[t]hus, it may not be the basis for a motion to dismiss" (Allied Bldg. Inspectors Intl. Union of Operating Engrs., Local Union No. 211, AFL-CIO v Office of Labor Relations of City of N.Y., 45 NY2d 735, 738). However, upon granting that branch of the defendants' motion which was to compel arbitration pursuant to CPLR 7503(a), the court should have stayed the action (see CPLR 7503[a]; Allied Bldg. Inspectors Intl. Union of Operating Engrs., Local Union No. 211, AFL-CIO v Office of Labor Relations of City of N.Y., 45 NY2d at 738). Pursuant to CPLR 7503(a), the order granting a motion to compel "shall operate to stay a pending . . . action."
Conclusion
Accordingly, for the reasons stated herein, the order is modified, on the law, (1) by deleting the provision thereof granting that branch of the defendants' motion which was, in effect, pursuant to CPLR 3211(a) to dismiss the complaint, and substituting therefor a provision denying that branch of the motion, and (2) by adding thereto a provision staying the action pending arbitration; as so modified, the order is affirmed.
MASTRO, A.P.J., CHAMBERS and IANNACCI, concur.
ORDERED that the order is modified, on the law, (1) by deleting the provision thereof granting that branch of the defendants' motion which was, in effect, pursuant to CPLR 3211(a) to dismiss the complaint, and substituting therefor a provision denying that branch of the motion, and (2) by adding thereto a provision staying the action pending arbitration; as so modified, the order is affirmed, with costs to the defendants.
ENTER:
Aprilanne Agostino
Clerk of the Court